UNITED STATES OF AMERICA
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 08 CR 106 |
| v. ) | |
| ) | Judge James B. Moran |
| RAYMIE HENDERSON, ) | |
| NOWELL PATRICK LANDO and ) | |
| AUGUSTUS WRIGHT ) | |

### GOVERNMENT'S CONSOLIDATED RESPONSE TO
### DEFENDANTS' MOTIONS TO DISMISS

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits its consolidated response to defendants Raymie Henderson's and Augustus Wright's motions to dismiss the indictment.[1] For the reasons stated below, these motions should be denied.

### BACKGROUND

On February 5, 2008, a federal grand jury returned an indictment against defendants, charging that from in or about 2001 to in or about October 2003, defendants conspired with each other and others to launder drug proceeds, in violation of 18 U.S.C. § 1956(h) (count one). Henderson was also charged with money laundering, in violation of 18 U.S.C. § 1957 (count two).

The indictment charges that, as part of the conspiracy, defendants misrepresented, concealed and hid, and caused and attempted to have others misrepresent, conceal, and hide the purposes and the acts done in furtherance of the conspiracy. (Indictment at ¶ 14.) Specifically, Wright accepted a substantial amount of money from Individual A, whom Wright knew to be a drug dealer, with the

---

[1] Wright filed a motion to dismiss count one of the indictment [Docket #49], which Henderson adopted in his own motion to dismiss count one. [Docket #54.] Henderson also filed a motion to dismiss the 18 U.S.C. § 1957 charge. [Docket #55.]

understanding that Wright would "clean up" that money by using it to purchase and renovate real estate. (*Id.* at ¶ 3.) Wright then gave Lando a portion of Individual A's money, which Wright and Lando agreed would be used to purchase and renovate real estate. (*Id.* at ¶ 4.) Wright and Lando further agreed that the title to the real estate would be put in Wright's name to conceal and disguise Individual A's ownership interest in the properties purchased with Individual A's drug money. *Id.*

As part of the conspiracy, Lando shared Individual A's money with Henderson, his business partner in R & P New Development. (*Id.* at ¶¶ 1, 5.) Lando and Henderson used the money to buy real estate and then renovate those properties. *Id.* From in or about 2001 through in or about 2002, Lando and Henderson used Individual A's money to renovate property located at 10951 S. Michigan Avenue in Chicago. (*Id.* at ¶ 6.) Lando and Henderson also used Individual A's money to purchase: (1) 315 W. 155th Street in Harvey on or about June 6, 2001 (*Id.* at ¶ 7); (2) 6529 S. Aberdeen in Chicago on or about June 6, 2001 (*Id.* at ¶ 8); (3) 203 E. 17th Street in Chicago Heights on or about June 6, 2001 (*Id.* at ¶ 9); and (4) 305-07 154th Place in Calumet City in or about December 2001 (*Id.* at ¶ 10). For each of these purchases, Lando and Henderson placed the title of the property in R & P New Development's name. (*Id.* at ¶¶ 7-10.)

In or about the Fall of 2001, Individual A met with Lando and Wright and demanded that they repay the funds he had previously given to Wright. (*Id.* at ¶ 11.) On February 7, 2003, Henderson executed a quitclaim deed for the property located at 10951 S. Michigan Avenue, conveying the property to Wright for the benefit of individual A. (*Id.* at ¶ 12.) The indictment alleges that one week later, on February 14, 2003, Henderson recorded his November 2002 purchase of the 10951 S. Michigan Avenue property. (*Id.* at ¶ 13.)

Henderson is charged separately in count two that on or about October 10, 2003 at

Homewood, he knowingly engaged and attempted to engage in monetary transactions affecting interstate commerce and involving criminally derived property of a value greater than $10,000. Specifically, the indictment charges Henderson with selling for approximately $92,500 the property located at 203 E. 17th Street in Chicago Heights, Illinois, which property was derived from drug trafficking.  (count two at ¶ 2.)

## ANALYSIS

Defendants Wright and Henderson now move pursuant to Fed. R. Crim. P. 12(b) to dismiss counts one and two of the indictment.  As to count one, defendants argue that the applicable statute of limitations for money laundering had expired before the government indicted defendants because, they claim, the transfer of 10951 S. Michigan was completed by May 28, 2002.  However, because defendants' conspiracy continued beyond the execution and recording of the February 7, 2003, quitclaim deed, the indictment is timely.  Henderson also moves to dismiss count two of the indictment, arguing that the indictment fails to state an offense under 18 U.S.C. § 1957 because there is no allegation that involves a monetary instrument by, through, or to a financial institution.  To the contrary, the indictment sufficiently alleges the § 1957 charge: it states each of the elements of the charge; it provides adequate notice of the charge to the defendant; and it allows the defendant to assert the judgment as a bar to future prosecutions.  Defendants' motions should therefore be denied.

### I.    Standard of Review

Generally, an indictment is tested before trial "solely by its sufficiency to charge an offense, regardless of the strengths or weaknesses of the government's case." *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988).  An indictment is legally sufficient if it: (1) states "each of the elements

of the crime charged;" (2) provides "adequate notice of the nature of the charges so that the accused may prepare a defense;" and (3) allows "the defendant to raise the judgment as a bar to future prosecutions for the same offense." *United States v. Fassnacht*, 332 F.3d 440, 444-45 (7th Cir. 2003) (*citing United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000); *Russell v. United States*, 369 U.S. 749, 763-63 (1962)). In considering a motion to dismiss an indictment, the court "must view all facts in the light most favorable to the government." *United States v. Vrdolyak*, 536 F. Supp. 2d 899, 904 (N.D. Ill. 2008) (*quoting United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)).

In moving to dismiss count one of the indictment, defendants do not challenge the sufficiency of the allegations; rather, they challenge the sufficiency of the evidence, which is inappropriate at this time. In considering the motion to dismiss, the court is generally limited to the four corners of the indictment. *See, e.g., United States v. Safavian*, 429 F. Supp. 2d 156, 159 (D.C. Cir. 2006) ("The court cannot properly consider such matters in evaluating a motion to dismiss the indictment."); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment."). Defendants, however, have ignored this well-settled principle and have attached several exhibits to their motion, then further supplemented their motion with an affidavit in an attempt to show that the indictment is time-barred. Because the court may take judicial notice of matters of public record, *see United States v. Pitt-Des Moines, Inc.*, 970 F. Supp. 1346, 1349 (N.D. Ill. 1997) (citation omitted), the government does not object to the court's consideration of the property transfer exhibits attached to defendants' motion, *i.e.*, exhibits A through F, many of which also were referenced in the indictment. The government objects, however, to the submission of the affidavit of Matthew A. Flamm. [Docket #52.] The affidavit improperly attempts to explain

and interpret various documents, as well as purports to offer legal conclusions about the legal effect and validity of those documents. Accordingly, the government requests that the court either strike or decline to consider the affidavit in ruling on defendants' motion to dismiss.[2]

## II.     Defendants' Conspiracy Continued into the Limitations Period

Under 18 U.S.C. § 3282, an indictment for a non-capital offense must be brought within five years "after such offense shall have been committed." For purposes of § 3282, an offense is "committed" when it is "completed . . ., that is, when each element of that offense has occurred." *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999) (*citing Toussie v. United States*, 397 U.S. 112, 115 (1970), *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987)). A conspiracy, however, falls within an exception to this general rule; it is a continuing offense. *Id.* "[F]or a conspiracy offense, the statute of limitations would not run from the time of the first overt act, but instead would run from the occurrence of the last act in furtherance." *Id.* Additionally, "the government is not required to prove any overt acts with regard to a particular defendant within the limitations period; instead, the government is required to prove that the conspiracy existed into the limitations period and that the defendants did not withdraw before that period." *United States v. Curry*, 977 F.2d 1042, 1058 (7th Cir. 1992) (*citing United States v. Read*, 658 F.2d 1225, 1232-33 (7th Cir. 1981)). *See also United States v. Useni*, 516 F.3d 634, 655-56 (7th Cir. 2008).

Here, the indictment alleges, and the property transfer exhibits offered by defendants

---

[2]Notably, the affidavit supports the government's allegations that on February 7, 2003, Wright's attorneys filed a quitclaim deed on 10951 S. Michigan. The parties disagree about the purpose of that conveyance -- defendants assert it was a lawful transfer; the government asserts it was part of an ongoing effort to disguise the source of the proceeds used to purchase the property. In any event, this is a factual dispute to be decided at trial, and it cannot be resolved on a motion to dismiss.

corroborate, that the money laundering conspiracy charged in count one of the indictment continued into the limitations period and did not end by February 7, 2008. Defendants do not dispute that Henderson executed a quitclaim deed for the 10951 S. Michigan Avenue property on or about February 7, 2003, or that the deed was recorded on April 24, 2003. Both actions were in furtherance of the conspiracy to launder drug proceeds by purchasing and renovating real estate while disguising Individual A's ownership interest in the property, and both actions fall within the limitations period.

In their motions to dismiss count one of the indictment, defendants contend that the statute of limitations had expired before they were indicted because Wright had title to the 10951 S. Michigan Avenue property as of November 25, 2002. In particular, defendants point to the exhibits attached to their motion and cite to state law for the proposition that, pursuant to the after-acquired title doctrine, Wright had title to the 10951 S. Michigan Avenue property as of November 25, 2002. Defendants contend that the "alleged scheme to put WRIGHT'S name on the property for the benefit of Individual A was completed on November 25, 2002" because Wright's name had been placed on the property on May 28, 2002 and Wright had obtained equitable title to the property on November 25, 2002. *See* Defendant Wright's Motion to Dismiss at ¶ 16. This contention not only misapprehends the purpose and scope of the conspiracy, it ignores the continuing nature of the conspiracy.

The money laundering conspiracy's primary purpose was to "clean up" Individual A's money through the purchase and renovation of property, not simply to put Wright's name on the property. As a result, the conspiracy did not end with the transfer of title from Henderson to Wright, even if Wright legally held title to the property as of November 25, 2002. Wright's continued possession of title to the property located at 10951 S. Michigan Avenue into the limitations period

was for the benefit of Individual A, as charged in the indictment, and it shows that the conspiracy continued to exist into the limitations period. Even accepting for the sake of argument defendants' explanation as to the purpose of the February 7, 2003, quitclaim deed, the execution and recording of that quitclaim deed were overt acts undertaken to further the conspiracy and to misrepresent, conceal, and hide the purposes and acts done in furtherance of the conspiracy, *i.e.*, by putting the title to the property in Wright's name, as instructed by Individual A. (Indictment at ¶ 4.) The indictment is therefore timely.

None of the authority cited by defendants in support of their motions to dismiss alters this analysis. Henderson cites to two cases, neither of which involves a money laundering conspiracy or an overt act in furtherance of the conspiracy within the limitations period. In *United States v. Ben Zvi*, 242 F.3d 89, 97 (2d Cir. 2001), the Second Circuit determined that, with regard to a wire fraud conspiracy, the indictment's allegation that the defendant "caus[ed]" the wiring of electronic funds did not constitute an overt act for purposes of the statute of limitations because it "did not involve or otherwise turn on any identifiable act or omission of the conspirators as of the time of the wire transfer." Similarly, in *United States v. Hitt*, 249 F.3d 1010, 1017 (D.C. Cir. 2001), the D.C. Circuit held that an indictment charging the defendant with conspiring to deceive the United States into issuing export licenses was untimely because the conspiracy ended with the issuance of export licenses, not on the later date when the tools at issue were exported and delivered. There, the indictment alleged that "a goal of the conspiracy was to obtain the export licenses allowing the sale and exportation of machine tools to [China]." *Id.* at 1018. The *Hitt* indictment failed to allege, however, that any overt act in furtherance of obtaining the export licenses occurred within the limitations period. *Id.* at 1019. In finding the indictment untimely, the court further explained that

7

"[i]f the government envisioned a broader common goal for the conspirators, namely 'shipment of the tools to locations . . . without regard for license requirements,' . . . it was obligated to ensure that the Grand Jury stated that goal with certainty . . . ." *Id.*

In the instant matter, unlike the cases cited by defendants, the indictment alleged an ongoing conspiracy to launder money with overt actions undertaken by defendants in furtherance of the conspiracy during the limitations period. As stated in the indictment, a goal of the conspiracy was to conceal and disguise Individual A's ownership interest in that property by having Wright hold title to the property for Individual A's benefit, pursuant to Individual A's instructions. The indictment alleges that this objective was not accomplished by the execution of the quitclaim deed transferring title to Wright from Henderson but by Wright's continuing possession of the property. Moreover, defendants take issue with the effect of the execution of the quitclaim deed but not with the act of executing the deed itself. Their execution and recording of the February 7, 2003, quitclaim deed was an overt act in furtherance of the conspiracy, regardless of the legal effect it may have had on the title holder to the Michigan Avenue property at any particular time. Defendants offer no authority to the contrary. Because count one of the indictment alleges that the conspiracy existed into the limitations period and overt acts on the part of defendants that occurred within the limitations period, defendants' motions to dismiss count one should be denied.

**III.    The Indictment Sufficiently Alleges the 18 U.S.C. § 1957 Charge Against Henderson**

Citing no authority in support of his motion to dismiss the 18 U.S.C. § 1957 charge against him, Henderson contends that the indictment fails to state an offense under § 1957 because there is no allegation in the indictment that involves a monetary instrument by, through, or to a financial institution. This contention is without merit.

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the crime charged." As stated above, an indictment must state all of the elements of the offense, be sufficiently specific to inform the defendant of the charge, and enable the defendant to plead double jeopardy in any future prosecution for the same offense. *United States v. Glecier*, 923 F.2d 496, 499 (7th Cir. 1991). Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished. *Hamling v. United States*, 418 U.S. 117, 118 (1974); *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997). However, "[i]t is not necessary to spell out each element, [so long as] each element [is] present in context." *United States v. Westmoreland*, 240 F.3d 618, 633 (7th Cir. 2001) (*quoting United States v. Smith*, 223 F.3d 554, 571 (7th Cir. 2001)).

To sustain a charge of money laundering under 18 U.S.C. § 1957, the government must prove the defendant: (1) knowingly engaged or attempted to engage in a monetary transaction; (2) in criminally derived property; (3) of a value greater than $10,000; (4) and the property was derived from specified unlawful activity. *See generally United States v. George*, 363 F.3d 666, 675 (7th Cir. 2004). Each of these elements is alleged in count two of the indictment, where the government specifically alleged that defendant sold property located at 203 E. 17th Street in Chicago Heights, Illinois for $92,500. Count two also alleges that the property was derived from specified unlawful activity, namely drug trafficking.[3] In so alleging, the government placed the defendant on notice of the charges against him such that defendant can prepare a defense and can plead double jeopardy

---

[3]Defendant is also on notice of the role the count two property played in the money laundering scheme alleged in count one. *See* Indictment at ¶ 9.

against a subsequent prosecution.  Nothing more is required.  *See, e.g., United States v. McCarter*, 307 F. Supp. 2d 991, 994 (N.D. Ill. 2004) ("indictment need not break down 'attempt into a definition including taking a 'substantial step'").  Henderson's motion to dismiss the section 1957 charge should therefore be denied.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the court deny defendants' motions to dismiss [#49, 54, 55].

          Respectfully submitted,
          PATRICK J. FITZGERALD
          United States Attorney

By:    s/Megan Cunniff Church
       LISA M. NOLLER
       MEGAN CUNNIFF CHURCH
       Assistant United States Attorney
       219 South Dearborn Street
       Chicago, Illinois 60604

UNITED STATES OF AMERICA
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA        ) | |
| ) | No.   08 CR 106 |
| v.                              ) | |
| ) | Judge James B. Moran |
| RAYMIE HENDERSON,               ) | |
| NOWELL PATRICK LANDO and        ) | |
| AUGUSTUS WRIGHT                 ) | |

**NOTICE OF FILING AND CERTIFICATE OF SERVICE**

TO:  Robert Habib            Eugene Steingold         Stanley Hill
     77 W. Washington St.    111 W. Washington St.    651 W. Washington Blvd.
     #411                    #1050                    #205
     Chicago, IL 60602       Chicago, IL 60602        Chicago, IL 60661

   PLEASE TAKE NOTICE that on Monday, April 28, 2008, the undersigned filed with the Clerk of the Court for the Northern District of Illinois, the following document:

**GOVERNMENT'S CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS**

                              By:    s/Megan Cunniff Church
                                     Megan Cunniff Church
                                     Assistant United States Attorney

   The undersigned Assistant United States Attorney hereby certifies that this document was served on April 28, 2008, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing ("ECF") pursuant to the district court's system as to ECF filers.

                                       s/Megan Cunniff Church
                                       Megan Cunniff Church
                                       Assistant United States Attorney